

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

March 4, 1971

Hon. J. W. Edgar
Commissioner of Education
Texas Education Agency
201 East 11th Street
Austin, Texas 78701

Opinion No. M- 800

Re: Several questions relating
to compensation of personnel
under the Foundation School
Program, Article 2922-14,
Vernon's Civil Statutes, and
related statutes.

Dear Dr. Edgar:

We quote from your letter requesting an opinion from this office in part as follows:

"In Article IV (Salary Schedules) of Senate Bill 116, 51st Legislature, R.S., 1949, as last amended by Section 1 of House Bill 240, Acts 61st Legislature, R.S., 1969, at page 2638, Sections 3 and 4 provide as follows:

"The total cost of professional salaries allowable for purposes of this (Foundation Program) Act shall be determined by the application of the salary schedule to the total number of approved professional units, provided that such professional units are serviced by approved professional position employments.

"Section 4:

"The annual (minimum) salary of personnel authorized for employment under the . . . Foundation School Program for the school year 1971-72 and for each year thereafter shall be the monthly base salary, plus (grade step) increments, as prescribed in the 'Texas State Public Education Compensation Plan' in subsection (1), multiplied by the number of months prescribed in the position description for each respective position.

"Subsection (2) furnishes description, required preparation and education, pay grade and the number of months payment authorized for each

-3881-

position under the TSPE Compensation Plan.  Such stipulations are teachers with Bachelor or Master's degrees are as follows:

| "Pay Grade | Number Months Paid | Class Title | Description of Position | Required Preparation and Education |
|---|---|---|---|---|
| 7 | 10 | Teacher, B.A. | Teach at grade level or in teaching field for which prepared, under general supervision only. | Degree, no deficiency in professional education or in teaching field.  Fully certified. |
| 8 | 10 | Teacher, M.A. | Teach at grade level or in teaching field for which prepared, under general supervision only. | Master's degree. Certified. |

"From its enactment in 1949 until presently, the Foundation School Program's formula for the allocation of classroom teacher units has never defined or specified the duties of a classroom teacher unit.  See Article III of Senate Bill 116, Acts 51st Legislature, R.S., 1949, and as last amended in Section 2A of House Bill 240, supra.  Thus, since the inception of the Program Act, a number of school districts have listed on their Foundation Program rosters, in reporting the utilization of allocations for classroom teacher units, locally assigned personnel (fully qualified and certified to teach) who are performing administrative positions, such as assistants to the superintendent, personnel administrators, business manager, and/or purchasing director.

"Most districts following such practice employ 'excess' teachers, viz., teachers in excess of the number allotted the district under the Program formula; who are paid from local funds. In those districts not employing 'excess' teachers, the number of persons utilized in administrative positions and listed on the Foundation Program

roster plus the classroom teacher units actually assigned to teaching on the campuses does not exceed their classroom teacher units allotted.

"   . . .

"(1)  Do the position descriptions assigned for the class designated 'teacher' in the . . . Public Education Compensation Plan preclude school districts from placing certified administrative staff personnel on the Foundation Program roster in the utilization of its classroom teacher units allotment?

"If the answer to(1) is in the negative, and the practice above described legally may continue, beginning 1971-72:  (2)  Should the practice be limited to those school districts that employ at least as many 'excess' teachers as the number of administrative personnel that are placed on the Foundation Program roster in the utilizing of its classroom teacher unit allotment?

"Subsection (1) of Section 4 as appears in Section 1 of House Bill 240 at page 2639 is a statutory chart providing for and entitled: Salary By Steps Above Base.  It stipulates that 'Each individual will move to the step in this schedule immediately above the monthly rate received in 1970-71 and shall advance thereafter one (1) additional step with each added year of experience until the maximum is attained.'

"This salary-grade-step provision presents problems in the position:  Pay Grade 10-Instructional Officer I (serve as part-time principal on campus with 19 or fewer teachers); and position: Pay Grade 14-Administrative Officer V (serve as superintendent of system of 3000 ADA or less).

"Re Pay Grade 10 problem:  For the current 1970-71 school year, part-time principals for salary purposes are divided into two categories: Part-time principals (designated as head teachers) --who serve one campus with 3 to 6 classroom teacher units; and second,--who serve in an

accredited 12-grade high school district with
fewer than 9 classroom teacher units.  See sub-
section (6)c on page 2637, Acts 61st Legislature,
R.S.  In 1970-71, such (head teachers) part-time
principal units are allotted a Foundation Program
salary of 1.08 times the monthly salary he would
receive as a classroom teacher multiplied by 10
(months).  See item HEAD TEACHERS on page 2636,
supra.

"In 1970-71, the cited law further provides
that all other Part-Time Principals shall receive
1.15 of the monthly teacher salary multiplied by
10.

"In 1971-72, however, the Compensation Plan
does away with the categories (head-teacher part-
time principals.)  It provides for part-time and
full-time principals on Pay Grades based on the
number of 'teachers' on the school campus where
they serve.  Question (3).

"For 1971-72 must those part-time principals
who served as 'head teachers' in 1970-71 and who
continue to serve as part-time principals (on
campuses with the from 3 to 6 classroom teacher
units, or an accredited high school district
with fewer than 9 teacher units) be placed in
the Pay Grade 10 step immediately above the
monthly rate received in 1970-71?

"   . . .

"Re Pay Grade 14 problem:  For the current
1970-71 school year, superintendents in districts
with 600 or less ADA (average daily attendance)
have a minimum Foundation Program salary computed
at 1.30 of the monthly teacher salary multiplied
by 12.  Superintendents in districts of 601 to
5000 ADA have such salaries determined at 1.50
of the monthly teacher salary multiplied by 12.
See page 2636, Acts 61st Legislature, R.S.
Question (4):

"For 1971-72, must superintendents who in
1970-71 were superintendents in districts of
600 ADA or less and who continue to serve as
superintendents in such size districts be placed
in that step in Pay Grade 14 immediately above
the monthly rate received in 1970-71?

"  . . .

"As heretofore noted in Subsection (2), the Compensation Plan provides for Pay Grade status of part-time and full-time principals based upon the number of 'teachers' on the campus where they serve. As provided in the Foundation School Program law, principal units are allocated on a district-wide basis according to the number of approved classroom teacher units allotted to the district. See Section 16.18, Texas Education Code. Question (5):

"Does the word 'teachers' as used in the Compensation Plan for Pay Grade placement of part-time principals (Instructional Officer I and Instructional Officer II) mean Foundation School Program formula classroom teacher units only-- or may 'teachers' be construed to mean all teachers that are under the supervision of the campus part-time principal: including vocational, special education, 'excess' teachers, and teachers paid from Federal funds?

"  . . .

We will answer your questions in the order in which they are submitted.

1.

Our consideration of the meaning of the term "teacher" with reference to "classroom teacher professional units", as those terms are used in the now existing school laws requires that we consider in pari materia the provisions of,

a) House Bill 240, Acts 61st Legislature, Regular Session, 1969, chapter 872, page 2634, and more particularly the provisions of Section 2A of said Bill at page 2645 wherein they comprehend Subsection (1) of Section 1 of Article 2922-13, as re-enacted by the 61st Legislature and as codified by Vernon; and

b) Section 16.13 of the Texas Education Code, as enacted by the same Regular Session of the 61st Legislature.

The provisions of House Bill 240 must be given preference where they may conflict with the Code.[1]

In comparing the provisions of Section 2A of House Bill 240 with those of Section 16.13 of the Texas Education Code, it is obvious that some of their respective provisions which pertain to the allocation of classroom teacher professional units to school districts are in conflict. However, neither Section 2A of House Bill 240 nor Sections 16.07 and 16.13 of the Texas Education Code in any manner define or otherwise specify the duties of a "classroom teacher."

In view of the language contained in "Description of Positions, Assigned to Class Title," as set forth in Subsection (2) of Section 4 of Section 1 of House Bill 240 (Article 2922-14, Sec. 4(2), V.C.S.), we have concluded that the word "Teacher, B.A." and "Teacher, M.A.", as those position designations and such "Class Title" are used in the quoted Pay Grades Numbers 7 and 8 (H.B. 240, page 2641) should be construed to mean class room teachers only. The "Description of Positions Assigned to Class Title" applicable to these two classes, reads:

| "Class Title | Description of Positions Assigned to Class Title |
|---|---|
| "Teacher, B.A. | Teach at grade level or in teaching field for which prepared, under general supervision only |
| "Teacher, M.A. | Teach at grade level or in teaching field for which prepared, under general supervision only." |

---

[1] Both the provisions of Section 1 of H.B. 240 and of the Texas Education Code became effective on September 1, 1969. However, Section 5 of the Code provides, "If any act passed at the same session of the legislature conflicts with any provision of the Texas Education Code, the act prevails." Section 2 of the Code repealed prior Article 2922-13, as enacted in 1949; an Article of similar content, bearing the same number, was re-enacted by the same session of the 61st Legislature.

These two statutory provisions must be construed in pari materia with Sections 16.07 and 16.13, Texas Education Code, wherein teacher classifications are set out to effectuate the Foundation School Program. The term "classroom teachers" is used in Section 16.07 as distinguished from the other professional positions or units listed in that Section. The "classroom teacher professional units" shall be determined and teachers alloted in the manner prescribed by Section 16.13.

Our opinion is that the practice of certain school districts described in connection with Question No. 1 may not legally continue beginning with the school year 1971-72. Black's Law Dictionary, 4th Edition, defines "teacher" as follows:

"Teacher--one who teaches or instructs; especially, one whose business or occupation is to teach others; preceptor."

In view of our answer to your first question, we are not required to answer your second question.

2.

Our answer to your third question, based upon the position classification schedule set forth in House Bill 240, at pages 2640-2644, is that for the school year 1971-72 those "part-time principals" who served as "head teachers" (on campuses with from 3-6 classroom teacher units, or an accredited high school district with fewer than 9 teacher units) during the school year 1970-71 and will continue to serve in such size districts during 1971-72 should be classified in Pay Grade 10 at the step immediately above the monthly rate received during 1970-71.

3.

In answer to your fourth question, our opinion is that superintendents who in 1970-71 were superintendents in districts of 600 ADA or less and who will continue to serve as superintendents in such size districts during 1971-72 should be classified in Pay Grade 14 at the step immediately above the monthly rate received during 1970-71.

Article 2922-14, Vernon's Civil Statutes, as amended in 1967 (Acts 60th Leg., Reg.Sess., ch. 721, page 1849) was repealed by Section 2(a) of the Texas Education Code which was enacted by the 61st Legislature, Regular Session, in 1969, to be effective

September 1, 1969.  The provisions of this repealed Article
2922-14, contained in its Section 1, subsection 6, relating
to the compensation of principals were carried forward into
Section 16.37 of the Code.  However, the same Regular Session
of the 61st Legislature also re-enacted a new Article bearing
the same number Article 2922-14 (as codified by Vernon, same
being Section 1 of H.B. 240, ch. 872, p. 2634).  This new Article
2922-14, in its Section 4, subsections (1) and (2) (shown in
H.B. 240 at p. 2639-2644) also makes certain provisions relating
to salaries and classification of part-time principals.

Any conflicts between this new Article 2922-14 (H.B.
240) and the Texas Education Code (H.B. 534) both having been
enacted at the same regular session of the 61st Legislature,
are to be resolved by giving preference to the provisions of
Article 2922-14.  This is because Section 5 of the Code (H.B.
534) so provides as follows:

"If any act passed at the same session of
the legislature conflicts with any provision
of the Texas Education Code, the act prevails."

Our answer to your fifth question is that "teachers,"
as used in Class Title of Instructional Officer I and Instructional
Officer II as shown in House Bill 240 at page 2642 of the Session
Laws of the 61st Legislature, Regular Session, 1969,* includes not
only classroom teacher units but also vocational, special education,
"excess" teachers and teachers paid from federal funds.

### S U M M A R Y

For the school year 1971-72 school districts
are not authorized to place certified administrative
staff personnel on the foundation program roster in
the utilization of its classroom teacher units al-
lotments unless such personnel meet the definition
of "classroom teacher" as formulated under the au-
thority of Article 2922-14, Sec. 4(2), Vernon's
Civil Statutes (H.B. 240, Acts 61st Leg., R.S.,
1969) and Sections 16.07 and 16.13 of the Texas
Education Code.

For the school year 1971-72, those "part-
time" principals who served as "head teachers"
(on campuses with from 3-6 classroom teacher
units, or an accredited high school district

*Codified by Vernon as Article 2922-14, Section 4(2), as enacted
by this H.B. 240.

with fewer than 9 teacher units) during the school year 1970-71 and will continue to serve in such size districts during 1971-72 should be classified in Pay Grade 10 at the step immediately above the monthly rate received during 1970-71.

Superintendents who in 1970-71 were superintendents in districts of 600 ADA or less and who will continue to serve as superintendents in such size districts during 1971-72 should be classified in Pay Grade 14 at the step immediately above the monthly rate received during 1970-71.

"Teachers" as used in Class Title of Instructional Officer I and Instructional Officer II as shown in House Bill 240 at page 2642 of the Session Laws (61st Leg., R.S. 1969) includes not only classroom teacher units but also vocational, special education, "excess" teachers and teachers paid from federal funds.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Ivan R. Williams, Jr.
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman
James McCoy
Dick Chote
Camm Lary
Rex White

MEADE F. GRIFFIN
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant